# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

MICHELE SALVEMINI, Individually and )
as Personal Representative of the Estate )
of LUCIANA DELL'ACCIO, Deceased, )
*et al.*, )
                              )
        Plaintiffs, )
                              )
        v. )      C.A. No. 1:22-cv-00977-MN-SRF
                              )
AIR & LIQUID SYSTEMS )
CORPORATION, *et al.*, )
                              )
        Defendants. )

## REPORT AND RECOMMENDATION

## I.    INTRODUCTION

       Before the court in this asbestos-related personal injury action are three motions for summary judgment filed pursuant to Federal Rule of Civil Procedure 56 ("the motions"). The motions were filed by Defendants Air & Liquid Systems Corporation, sued individually and as successor-by-merger to Buffalo Pumps, Inc. ("Buffalo") (D.I. 115),[1] ConocoPhillips Co., sued individually and as successor-by-merger to Conoco Inc. and Continental Oil Co. ("ConocoPhillips") (D.I. 121),[2] and Hess Corp. ("Hess") (D.I. 123).[3] For the reasons that follow, I recommend that Buffalo's motion be **GRANTED**, and that ConocoPhillips's and Hess's respective motions be **GRANTED-IN-PART and DENIED-IN-PART**.

---

[1] The briefing submitted for this motion can be found at D.I. 116, D.I. 133, and D.I. 144.
[2] The briefing submitted for this motion can be found at D.I. 122, D.I. 135, and D.I. 149.
[3] The briefing submitted for this motion can be found at D.I. 124, D.I. 138, and D.I. 148.

## II.    JURISDICTION

This case was referred to the undersigned Magistrate Judge on August 3, 2022.  (D.I. 13-2)  Pursuant to 28 U.S.C. § 1331, jurisdiction is proper in this court over Plaintiffs' claims asserted under the Jones Act, a federal statute providing remedies for injured seamen against their employers.  Under 28 U.S.C. § 1333, the federal courts have "original jurisdiction, exclusive of the courts of the States, of ... [a]ny civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled."  28 U.S.C. § 1333.

## III.    BACKGROUND

This case arises from Plaintiff Michele Salvemini's ("Salvemini") exposure to asbestos while working as a marine engineer on various merchant and United States Navy ships from 1974 to 2007.  Claims asserted on behalf of Salvemini's spouse, Luciana Dell'Accio ("Decedent") allege her exposure to asbestos is from laundering asbestos-contaminated clothing that Salvemini brought home from his work onboard these vessels.  (D.I. 124-1 at 34:16–19) [4] Salvemini brings claims individually, and as personal representative for the estate of his spouse, for injuries arising from his alleged direct asbestos exposure and Decedent's alleged secondary or take-home asbestos exposure.  (D.I. 1)  In addition, Salvemini and his three children, Francesco, Marco, and Mariangela Salvemini, (collectively, "Plaintiffs") have asserted a wrongful death claim arising from Decedent's exposure.  Salvemini also asserts a loss of consortium claim.  Plaintiffs are citizens of Italy, their place of primary residence.  (D.I. 124-1 at 10:8–9, 11:8–11)

---

[4] Defendant Hess is the only party to provide the complete deposition transcript of Salvemini, consisting of three volumes.  Accordingly, for ease of reference, all citations to Salvemini's testimony are to D.I. 124-1, 124-2, or 124-3.

### A. Procedural History

On July 26, 2022, Plaintiffs filed this personal injury and wrongful death case in the District of Delaware against fifteen Defendants, including Buffalo, ConocoPhillips, and Hess. (*See* D.I. 1)  During the course of this litigation six of those Defendants have been voluntarily dismissed.

The complaint asserts seven Counts against the moving Defendants: Count I asserts Strict Liability against all Defendants.  (*Id.* at ¶¶ 4–30) Count II asserts Negligence against all Defendants.  (*Id.* at ¶¶ 31–35)  Count III asserts False Representation Under Restatement of Torts § 402-B against all Defendants.  (*Id.* at ¶¶ 36–40)  Count IV asserts liability pursuant to the Jones Act, 46 U.S.C. § 30104 *et seq.*, against ConocoPhillips and Hess only.  (*Id.* at ¶¶ 41–55) Count V asserts a general maritime law claim, against ConocoPhillips and Hess only.  (*Id.* at ¶¶ 56–61)  Count VII asserts Loss of Consortium against all Defendants.  (*Id.* at ¶¶ 68–72)  and Count VIII asserts Wrongful Death by all Plaintiffs against all Defendants.  (*Id.* at ¶¶ 73–77)

On May 9, 2024, Defendants filed the instant motions for summary judgment.  (D.I. 115; D.I. 121; D.I. 123)  The motions were fully briefed on August 7, 2024, and are now ripe for review.

### B. Facts Regarding Asbestos Exposure History

From September to November of 1974, Salvemini was a marine engineer aboard the "*USS Phillips New Jersey*" ("*Phillips New Jersey*"), a Liberian oil tanker owned and operated by Philtankers, Inc., a Liberian subsidiary of ConocoPhillips predecessor, Phillips Petroleum Co. ("Phillips").  (D.I. 124-1 at 18:10–15; D.I. 122-6 at 8–10)  The *Phillips New Jersey* docked in New York, Philadelphia, and Baltimore.  (D.I. 124-1 at 19:3–5)  Salvemini was a marine engineer between November of 1974 and April of 1975 on the "*Arctic Tokyo*," a Liberian tanker

owned and operated by Arctic LNG Transportation Co. ("Arctic LNG"), a Liberian subsidiary of Phillips. (D.I. 124-1 at 18:16–23; D.I. 122-6 at 8–10)  The *Arctic Tokyo* traveled between ports in Alaska and Japan. (D.I. 124-1 at 19:6–8)  Salvemini performed repairs on the two ships while they were docked in ports throughout the United States. (*Id.* at 19:9–19)

From September to December of 1975, Salvemini was a marine engineer aboard the "*Good Hope*," which is a petroleum tanker alleged to be owned by Hess. (D.I. 124-1 at 22–23; D.I. 124-3 at 53–54)  Defendant Hess does not indicate what flag was flown by the *Good Hope*, but, according to Salvemini, he did not sail on any American-flagged vessel. (D.I. 124-1 at 23:5–16)  Plaintiffs allege in their briefing that the *Good Hope* was owned by Amerada Hess Shipping Corp., and flew a Liberian flag. (D.I. 138 at 5)

From 1985 to his retirement in 2007, Salvemini was a mechanical worker at a shipyard for Nuova Mechanica Navale, an Italian marine repair company, where he performed maintenance work in the engine rooms on various U.S. naval vessels. (D.I. 1 at ¶ 13)

Throughout his career as a marine engineer, Salvemini alleges he worked with asbestos-containing insulation, gaskets, and equipment that would create dust that he inhaled. (*Id.* at ¶ 48)  This dust would cover his clothes, which Salvemini would bring home to his spouse in Italy for laundering. (*Id.* at ¶ 12)  On April 28, 2020, Plaintiffs allege Salvemini's spouse, the Decedent, died from malignant mesothelioma, which Plaintiffs allege was caused by her exposure to asbestos fibers on her husband's clothing and other items he took home from the ships. (*Id.* at ¶ 16)  On April 29, 2022, Salvemini was diagnosed with progressive lung disease, which he alleges was caused by his repeated exposure to asbestos during his career as a marine engineer and shipyard mechanical worker. (*Id.*)

## IV.    LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Material facts are those that could affect the outcome of the proceeding, and "a dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the nonmoving party." *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)).

The moving party bears the initial burden of proving the absence of a genuinely disputed material fact.  *See Celotex*, 477 U.S. at 321.  The burden then shifts to the non-movant to demonstrate the existence of a genuine issue for trial, and the court must view the evidence in the light most favorable to the non-moving party.  *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 460–61 (3d Cir. 1989); *Scott v. Harris*, 550 U.S. 372, 380 (2007).  An assertion of whether or not a fact is genuinely disputed must be supported either by citing to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A)–(B).

To defeat a motion for summary judgment, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586.  The "mere existence of some alleged factual dispute between the parties will not

defeat an otherwise properly supported motion for summary judgment;" rather, there must be enough evidence to enable a jury to reasonably find for the non-moving party on the issue. *See Anderson*, 477 U.S. at 247–49. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249–50 (internal citations omitted); *see also Celotex*, 477 U.S. at 322. If the non-movant fails to make a sufficient showing on an essential element of its case on which it bears the burden of proof, then the movant is entitled to judgment as a matter of law. *See Celotex*, 477 U.S. at 322.

If a party fails to address another party's assertion of fact, the court may consider the fact undisputed, or grant summary judgment if the facts show that the movant is entitled to it. Fed. R. Civ. P. 56(e)(2)–(3).

## V.     DISCUSSION

Defendant Buffalo is a manufacturer of pumps installed onboard ships. It is alleged that Salvemini was exposed to asbestos over the course of his career through his work on the Buffalo pumps installed on all the ships on which he worked as an engineer and his wife, the Decedent, had "take-home" exposure from the asbestos on Salvemini's work clothing. The other moving Defendants, ConocoPhillips and Hess (collectively, "Vessel Defendants") are the alleged employers of Salvemini during his work aboard the three oil tankers from 1974 to 1975 where he was exposed to asbestos-containing equipment which is alleged to have caused his injuries and the take-home exposure of Decedent. (D.I. 133 at 5–6) All of the moving Defendants argue for judgment to be entered in their favor as a matter of law.

### A.     BUFFALO'S MOTION FOR SUMMARY JUDGMENT

Plaintiffs allege that Salvemini was exposed to Buffalo's asbestos-containing products from approximately 1974 to 1975 as an engineer aboard vessels owned and operated by Hess and

6

ConocoPhillips. Salvemini further alleges he was exposed to asbestos from Buffalo products while a marine mechanic from 1985 to 2007 working onboard the engine rooms of United States Navy vessels serviced by his employer at the shipyard in Naples, Italy. (D.I. 1 at ¶ 13)

It is undisputed by the parties that American maritime law applies to Plaintiffs' claims against Defendant Buffalo. (D.I. 117 at 1) Plaintiffs do not argue that any other law would apply in the absence of American maritime law. (D.I. 1 at ¶¶ 56–57; D.I. 117 at 1) For the reasons that follow, I recommend that Buffalo's motion for summary judgment be **GRANTED**.

### 1. The Jones Act Does Not Apply to Claims Against Buffalo

Plaintiffs argue that the evidence of record shows that Salvemini's exposure to Buffalo's pumps is sufficient to meet the "featherweight" standard of causation imposed by the Jones Act and that the pumps required the integration of an asbestos-containing part. (D.I. 133 at 7–9)

At the outset, Plaintiffs' arguments under the Jones Act are misplaced, as the Complaint does not assert a Jones Act claim against Buffalo. (*See* D.I. 1 at ¶¶ 41–55) (asserting Jones Act claims against ConocoPhillips and Hess only) Moreover, the Jones Act states that, "[a] seaman injured in the course of employment . . . may elect to bring a civil action at law . . . *against the employer*." 46 U.S.C. § 30104(a) (emphasis added). The Complaint does not assert, nor does the evidence of record show, that Salvemini was employed by Buffalo or that Buffalo owned the ships that Salvemini worked on during his career. (*See* D.I. 1) Accordingly, the featherweight standard of causation under the Jones Act does not apply to Plaintiffs' claims against Buffalo. The applicable standard under maritime law is substantial factor causation.

### 2. Maritime Law

Buffalo argues that Salvemini, and by extension, Decedent, cannot establish as a matter of law that an asbestos-containing product manufactured, sold or distributed by Buffalo was a

substantial factor in causing their alleged injuries.  To establish causation for asbestos related injuries under maritime law, "a plaintiff [must] show, for each defendant, that (a) he was exposed to the defendant's product, and (b) the product was a substantial factor in causing the injury he suffered."  *See Lindstrom v. A-C Prod. Liab. Tr.*, 424 F.3d 488, 492 (6th Cir. 2005) (applying maritime law); *see also Dumas v. ABB Grp., Inc.*, 2015 WL 5766460, at *8 (D. Del. Sept. 30, 2015), *report and recommendation adopted*, 2016 WL 310724 (D. Del. Jan. 26, 2016).

### a.  Product Identification

In establishing substantial factor causation, a plaintiff may rely upon direct evidence (such as testimony of the plaintiff or [d]ecedent who experienced the exposure, co-worker testimony, or eye-witness testimony) or circumstantial evidence that will support an inference that there was exposure to the defendant's product for some length of time.  *Abbay v. Armstrong Int'l, Inc.*, 2012 WL 975837, at *1 n.1 (E.D. Pa. Feb. 29, 2012) (citing *Stark v. Armstrong World Indus., Inc.*, 21 F. App'x 371, 376 (6th Cir. 2001)).

Buffalo argues that the product identification testimony from Salvemini is equivocal and insufficient to establish a high enough level of exposure such that the inference of asbestos exposure from a Buffalo pump is nothing more than conjectural.  (D.I. 117 at 10)

Plaintiffs respond that Buffalo pumps were installed on the three different merchant vessels on which Salvemini worked on from September of 1974 until December of 1975, the *Phillips New Jersey*, *Arctic Tokyo*, and *Good Hope*.  (D.I. 133 at 4–5)  Buffalo pumps were also aboard the United States Navy's 6th Fleet vessels on which Salvemini worked on from 1985 until his retirement in 2007.  Although Salvemini could not recall the name of every Navy vessel on which he worked, he came up with a partial list of 21 vessels.  (D.I. 124-1 at 61:14–62:21)  Unofficial records in Plaintiffs' possession show that Buffalo pumps were utilized on at least

8

eight of the naval ships on which Salvemini performed repairs in Italy. (D.I. 134-10 at 2–3) Salvemini recalls seeing Buffalo's name stamped on the casing of the centrifugal steam pumps on the marine tankers and the Navy ships. (D.I. 124-1 at 46:20–25, 48:1–5)

When the facts are viewed in the light favorable to Plaintiffs, the record establishes the presence of Buffalo pumps onboard the ships on which Salvemini worked throughout his career as a marine engineer.

### b. Substantial Factor Causation

Under *Lindstrom*, "[m]inimal exposure to a defendant's product is insufficient [to establish causation]. Likewise, a . . . showing that defendant's product was present somewhere at plaintiff's place of work is insufficient." *Lindstrom*, 424 F.3d at 492 (quotation marks and citations omitted). "Rather, the plaintiff must show 'a high enough level of exposure that an inference that the asbestos was a substantial factor in the injury is more than conjectural.'" *Abbay*, 2012 WL 975837, at *1 n.1 (quoting *Lindstrom*, 424 F.3d at 492).

Salvemini testified that his work throughout his career involved removal and replacement asbestos-containing gaskets from Buffalo pumps that he performed without wearing protective equipment. (D.I. 1 at ¶ 48) This work created dust that Salvemini inhaled and covered his clothes, which he brought home to his wife to launder. (*Id.* at ¶ 12)

Plaintiffs' own brief citing Salvemini's deposition states that he worked on, "almost all the pumps on the various vessels and performed more or less the same work on so many different brands of pumps, that he can't remember exactly what [he] did on each single brand of pump." (D.I. 133 at 4 (citing 124-1 at 52:7–11)) Salvemini testified that he was unable to state with any certainty how frequently he worked on Buffalo pumps as opposed to other manufacturers' pumps. (D.I. 124-1 at 46:20–25, 48:1–5) Salvemini further testified that the

replacement gaskets he used were manufactured by Chesterton, Garlock, Coffin, and that he knew they contained asbestos because the word "asbestos" would be on the side of the boxes. (D.I. 124-1 at 32:18–33:1)  Salvemini estimates that he replaced 3,000 gaskets but is unable to apportion how many of these were on Buffalo pumps, instead reiterating that his work involved "almost all the pumps." (D.I. 124-3 at 89:16–22; D.I. 133 at 4)

Salvemini's testimony is insufficient to raise a fact issue under *Lindstrom*, as he is unable to provide any level of certainty about the "frequency, regularity, and proximity" of his exposure to Buffalo pumps, such that a reasonable juror could find it was a "substantial factor" in causing his injury.  *See Lindstrom*, 424 F.3d at 492.  Instead, Plaintiffs provide a generalized argument that Salvemini worked with so many different brands of pumps, including Buffalo, Aldrich, Northern, Coffin, and Westinghouse, that his exposure to asbestos from Buffalo pumps must have been a substantial factor in causing his injuries.  (D.I. 124-1 at 46:20–25)  Plaintiffs' inability to differentiate the amount of the time Salvemini spent working on Buffalo pumps during his career leaves the court to speculate about the frequency, regularity, and proximity of Salvemini's exposure to asbestos from Buffalo pumps.

Plaintiffs unsuccessfully attempt to argue that there exists a material dispute of fact concerning substantial factor causation, by relying on circumstantial evidence disconnected from the instant case and from Salvemini's work onboard the vessels in issue.

Plaintiffs' first argument is that Buffalo's customers could order asbestos-containing replacement parts for the pumps directly from Buffalo.  (D.I. 133 at 3)  Plaintiffs point to Buffalo's Bulletin No. 3321-A, "Instructions for Installation and Operation of 'Buffalo' Pumps" that Plaintiffs allege is proof that customers could order asbestos-containing replacement parts

directly from Buffalo. (D.I. 133 at 3; *see also* D.I. 134-5 at 13) But such arguments are misplaced based on the relevant language as follows:

> Worn parts should be replaced to insure [sic] reliable and efficient operation. Sectional drawings are provided in this bulletin to which the customer can refer for proper designation when ordering repair parts. When ordering repair parts state [the] part number and the Figure No. referred to. Also[,] give [the] pump serial number which appears on the brass name plate furnished with all Buffalo pumps. This number is always made up of five or six digits and is also marked on the coupling end of the shaft and on the direction-of-rotation arrow on the pump casing.

(D.I. 134-5 at 13)

While the quoted section provides instructions for ordering replacement parts, the bulletin does not require customers to order such parts from Buffalo nor is there any connection to the specific Buffalo pumps on which Salvemini worked. Even assuming the instruction manual on which Plaintiffs rely includes references to asbestos-containing gaskets, Plaintiffs have not established any connection to the gaskets replaced by Salvemini. (D.I. 134 at 14)

Plaintiffs further cite to an invoice from Buffalo to the United States Navy to show that asbestos-containing gaskets were purchased from Buffalo by the Navy. (D.I. 133 at 3; *see also* D.I. 134-6) However, the invoice dates back to September of 1963, more than twenty years before Salvemini started repairing U.S. Navy vessels at the shipyard. (D.I. 134-6 at 2) Additionally, these invoices do not identify whether the gaskets purchased had any connection whatsoever to the Buffalo pumps installed on the naval ships on which Salvemini worked nor is there any way of reasonably discerning their replacement history.

Finally, Plaintiffs cite to limited portions of deposition testimony taken from a corporate representative of Buffalo, Martin Kraft, in unrelated litigation on December 9, 2008.[5] In the

---

[5] Martin Kraft was deposed in connection with *Handley v. Alfa Laval, Inc.*, 2009 WL 8729135 (Cal. Super.).

transcript, Kraft states that Buffalo provided replacement parts for some of Buffalo's centrifugal steam pumps from 1930s to the early 1980s. (D.I. 134-4 at 91:19–92:10) In reply, Defendants provide additional pages of the transcript, which show replacement parts were defined as "casing wearing rings, impeller nuts, impellers, mechanical seals, shaft sleeves." (D.I. 144-1 at 23) Notwithstanding, the lack of any mention of gaskets, this testimony is not connected in any way to the Buffalo pumps on which Salvemini worked.

Plaintiffs cite to a portion of deposition testimony from another Buffalo witness, Terrence Kenny, in an unrelated 2004 litigation. (D.I. 133 at 7) Kenny refers to gaskets installed inside of Buffalo pumps and states that asbestos-containing gaskets, in the instances that they were used, were not used by Buffalo after January of 1985. (*See* D.I. 134-7 at 92:3–12)[6] However, as Salvemini testified he did not know the maintenance history of the pumps, it is speculative to assume that asbestos-containing gaskets were still included on the Buffalo pumps on which he worked. (D.I. 124-3 at 74:9–12) Moreover, Salvemini worked on *external* flange gaskets on the pumps, not the internal components that Kenny identified.

In summary, Plaintiffs' circumstantial evidence does not create an issue of fact as to whether Salvemini was exposed to asbestos-containing gaskets on Buffalo pumps with such "frequency, regularity, and proximity" that such exposure was a "substantial factor" in causing his injury. *See Lindstrom*, 424 F.3d at 492; *Damon v. Aireon Manuf. Corp.*, 2015 WL 9461593, at *1 n.1 (E.D. Pa. Sept. 1, 2015) (granting defendant's motion for summary judgment even when there was evidence presented that plaintiff worked with defendant's equipment and was exposed

---

[6] Terrence Kenny was deposed in connection with *Susan MacDonald, et. al. v. Bondex International, Inc., et. al*, 2001 BC-265-537 (Cal. Super).

to dust through that work because there was no evidence that the dust or equipment contained asbestos).

### 3. Duty to Warn Under *DeVries*

Without first addressing substantial factor causation under *Lindstrom*, Plaintiffs argue in their answering brief that Buffalo's motion for summary judgment should be denied under *DeVries* because Buffalo is liable for any asbestos-containing components parts which it supplied, specified for use, or incorporated with the knowledge that it would subsequently need replacement with a similar asbestos-containing part. The court agrees with Buffalo that Plaintiffs' reliance on *DeVries* is misplaced.

In *Air & Liquid Systems Corp. v. DeVries*, 586 U.S. 446 (2019), the Supreme Court rejected "the more defendant-friendly bare-metal defense," which provided that "[i]f a manufacturer did not itself make, sell, or distribute the part or incorporate the part into the product, the manufacturer is not liable for harm caused by the integrated product." *Id.* at 453. Instead, the Supreme Court held that in the maritime tort context, a manufacturer has a duty to warn: "when (i) its product requires incorporation of a part, (ii) the manufacturer knows or has reason to know that the integrated product is likely to be dangerous for its intended uses, and (iii) the manufacturer has no reason to believe that the product's users will realize that danger." *Id.* at 457 (internal citations omitted).

The duty to warn applies when the product *requires* the part in order for the integrated product to function as intended. The Supreme Court noted certain specific circumstances in which its ruling would apply, namely, "when: (i) a manufacturer directs that the part be incorporated; (ii) a manufacturer itself makes the product with a part that the manufacturer

knows will require replacement with a similar part; or (iii) a product would be useless without the part." *Id.* at 456–57 (internal citations omitted).

The court addressed the circumstantial evidence on which Plaintiffs rely in § V.A.2.b, *supra*, in its analysis of substantial factor causation under *Lindstrom*. (D.I. 133 at 3)  The component parts in issue are external flange gaskets.  Plaintiffs have not identified any testimony or other evidence in the record that the flange gaskets were supplied by Buffalo.  To the extent Plaintiffs rely on the same circumstantial evidence in support of an argument that Buffalo owed a duty to warn of the dangers of asbestos in gaskets supplied by third parties, then such evidence is insufficient to create a material issue of fact for the reasons previously discussed.  Namely, the evidence is overly general, non-specific to the flange gaskets in issue and disconnected to any work Salvemini may have performed on a Buffalo pump onboard the merchant or naval vessels in issue. Therefore, I recommended that Salvemini's claims against Buffalo be dismissed and summary judgment be **GRANTED** in Buffalo's favor.

### 4.  Take-Home Exposure, Punitive Damages and Loss of Consortium

The court's recommendation to grant Buffalo's motion for summary judgment renders moot the need to address Buffalo's remaining arguments in support of dismissal of the Plaintiffs' remaining claims for take-home exposure, loss of consortium, and punitive damages.

Accordingly, I recommend that summary judgment be **GRANTED** on all claims Plaintiffs have asserted against Buffalo.

### B.    VESSEL DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

ConocoPhillips and Hess move for summary judgment on the following grounds:

(A) Neither the Jones Act nor American maritime law apply to Plaintiffs' claims; (B) The Vessel Defendants are not liable for tort claims asserted against their subsidiaries; (C) Even if American

maritime law applies, Plaintiffs cannot meet their burden of proof as a matter of law

(D)  Plaintiffs' claims for punitive damages, wrongful death and loss of consortium fail as a

matter of law; and (E) alternatively, all of Plaintiffs' claims should be dismissed pursuant to the

doctrine of *forum non conveniens*.  (D.I. 122; D.I. 124)

 Furthermore, Hess moved to dismiss Plaintiffs' claim of false representation, Count III,

of the Complaint.  Plaintiffs did not respond so their opposition is waived.  (D.I. 124; D.I. 138)

Accordingly, I recommend the false representation claim in Count III be dismissed as a matter of

law.

 For the reasons that follow, I recommend that Vessel Defendants' motions for summary

judgment on the remaining counts be **GRANTED-IN-PART and DENIED-IN-PART**.

### 1.  Choice of Law Determination

 When a case sounds in admiralty the question of whether maritime law is applicable is a

threshold dispute governed by federal law and, therefore, the law of this Circuit.  This court

follows Third Circuit precedent in *Neely* in determining whether American law applies to the

instant claims over which the court has subject matter jurisdiction pursuant to the Jones Act and

American general maritime law.  *Neely v. Club Med Management Services, Inc.*, 63 F.3d 166 (3d

Cir. 1995).[7]  *Neely* held that the choice of law methodology developed from the *Lauritzen*

decision provides the framework for the analysis.  *Id*; *Lauritzen v. Larsen*, 345 U.S. 571 (1953).

---

[7] *Neely* involved personal injury claims under the Jones Act brought by an American citizen
hired to work as a scuba diving instructor aboard a vessel registered in St. Lucia.  *Neely*, 63 F.3d
at 170.  Plaintiff's employer was a tour company incorporated in St. Lucia whose operations
were managed and directed by Club Med Management, an American corporation.  *Id*. at 171–72.
The *Neely* court applied the choice of law factors and found that application of American law
was reasonable.  *Id*. at 198.

The analysis is a product of three United States Supreme Court decisions, which the *Neely* referred to as the "*Lauritzen* triad" *Lauritzen*, *Romero*, *Rhoditis*. *Id.* at 170 (citing *Lauritzen*, 345 U.S. 573; *Hellenic Lines Ltd. v. Rhoditis*, 398 U.S. 306, 308 (1970); *Romero v. Int'l Terminal Operating Co.*, 358 U.S. 354 (1959)).

These cases developed a non-exhaustive list of factors for a choice of law analysis in suits for maritime injuries with foreign connections. *Neely*, 63 F.3d at 182. The *Neely* court recognized the expansion in *Romero* which held the *Lauritzen* analysis should govern not only Jones Act claims but also claims under the general maritime law for personal injuries. *Id.* at 176. If American law is not applicable or if the plaintiff fails to prove an element specific to the cause of action, the suit will fail on the merits. *Id.* at 181. Therefore, the *Lauritzen* choice of law analysis governs the Plaintiffs' claims in the instant suit.

### a. Threshold Requirement

*Neely* held that there are two steps to the *Lauritzen* inquiry. *Id.* at 176. First, as a threshold requirement, the plaintiff must demonstrate one of the following: "(a) injury to an American seaman or a seaman with American dependents, (b) injury in American territory, (c) American defendants, (d) an American flagged ship, or (e) a contractual choice of law clause specifying American law." *Id.* at 184–86.

The defendant may also establish foreign contacts at this step, though "[f]oreign contacts standing alone . . . are of extremely limited value . . . ." *Id.* at 188. Moreover, "[a] court typically should not hold that the United States' exercise of prescriptive jurisdiction is unreasonable in a case where the substance of relevant foreign law is unknown, unless it concludes that the basis for prescriptive jurisdiction is exceedingly weak and that virtually all

other contacts likely implicate policies of the foreign nation." *Id.* at 189.  Moreover, the plaintiff has no responsibility to demonstrate the content of potentially applicable foreign law.  *Id.*

Once this threshold is met, the second step is for the court to determine whether the application of American law is reasonable by considering "all relevant factors[,]" including the eight *Lauritzen* factors.  *Id.* at 183.  The *Lauritzen* factors are a guide to determining whether applying the law of the forum would be reasonable in light of the facts.  *Id.* at 182.

Accordingly, the court recommends that step one is satisfied.  There is a basis for prescriptive jurisdiction over the Vessel Defendants because they are American companies.  (D.I. 1 at ¶ 1; *see also* D.I. 124-1 at 20:6–13)  Additionally, some of the alleged exposure by Salvemini took place during maintenance work in American ports.  (D.I. 124-1 at 19:3–19, 21:12–24)  The Vessel Defendants argue that the ships are owned by Defendants' respective Liberian subsidiaries who should be the true Defendants.  The *Neely* court gave limited weight to the defendants' foreign contacts at this initial step.  *Neely*, 63 F.3d at 188.  Here, the court does not find the basis for prescriptive jurisdiction "exceedingly weak."

### b.  The *Lauritzen* Test

In determining whether the application of American law is reasonable, the court conducts a *Lauritzen* analysis.  The individual factors of the *Lauritzen* test are not requirements, and once the plaintiff has established prescriptive jurisdiction, it is incumbent upon the defendant to prove foreign contacts.  *Id.* at 188.

In *Lauritzen v. Larsen*, the Supreme Court outlined the following seven non-exhaustive factors:

> (1) [T]he place of the wrongful act; (2) the law of the flag; (3) the allegiance or domicile of the injured seaman; (4) allegiance of the defendant shipowner; (5) the place where the contract of employment was made; (6) the inaccessibility of a foreign forum; and (7) the law of the forum.

345 U.S. 571 (1953); *Hellenic Lines Ltd. v. Rhoditis*, 398 U.S. 306, 308 (1970); *Romero v. Int'l Terminal Operating Co.*, 358 U.S. 354 (1959)).

In *Rhoditis*, the Supreme Court added an eighth factor, the shipowner's base of operations. 398 U.S. at 309. "The *Lauritzen* test, however, is not a mechanical one. . . the significance of one or more factors must be considered in light of the national interest served by the assertion of Jones Act jurisdiction." *Id.* at 308–09.

### i.    Place of the Wrongful Act

In traditional international shipping contexts, "[t]he test of location of the wrongful act or omission . . . is of limited application to shipboard torts, because of the varieties of legal authority over waters she may navigate." *Lauritzen*, 345 U.S. at 583. Moreover, the location of the injury is likely fortuitous when the seaman is exposed to the same risks throughout the course of the journey. Here, Salvemini's alleged asbestos exposure took place in American ports in New York, Philadelphia, Baltimore, Los Angeles, Alaska, as well as in Japan, and international waters. (*See* D.I. 124-1 at 18:10–19:19) Decedent's alleged household exposure and resulting injuries took place solely in Italy. (*See* D.I. 124-3 at 65:14–18) Thus, this factor is accorded little weight in the choice of law analysis.

### ii.    Law of the Flag

The application of this factor in traditional maritime cases holds strong because the ship is considered part of the territory of the flag that it flies. *See Lauritzen*, 345 U.S. at 585. But "in order for the law of the flag appreciably to diminish the reasonableness of applying American

law, the defendant would have . . . to demonstrate both what the law of the flag was and that it conflicts in some respect with American law . . . ." *Neely*, 63 F.3d at 193. Here, the Phillips and Hess ships on which Salvemini worked flew Liberian flags, but neither Vessel Defendant contend that Liberian law applies to Plaintiffs' claims or explain how its application would differ from the laws of the United States. (*See* D.I. 122 at 7–8) Additionally, the "law of the flag has in the past been justified as a highly significant contact on pragmatic grounds (although less so in cases where there is a "flag of convenience,") it is basically insignificant when the court does not know what that law is, or where there is no conflict between American law and the law of the flag." *Neely*, 63 F.3d at 194–95 (internal citations omitted). Plaintiffs argue that Liberia is "obviously a flag of convenience," and neither Vessel Defendant squarely addresses this point.

Accordingly, the court finds this factor has no particular significance in deciding whether it is reasonable to apply American law in this case.

### iii.    Plaintiffs Domicile and Allegiance

Plaintiffs are domiciled in Italy. (D.I. 1 at ¶ 2) This factor weighs slightly against the application of American law. *Rhoditis*, 398 U.S. at 310 ("The flag, the nationality of the seaman, the fact that his employment contract was Greek, and that he might be compensated there are in the totality of the circumstances of this case minor weights in the scales compared with the substantial and continuing contacts that this alien owner has with this country.").

### iv.    Vessel Defendants Domicile and Allegiance

Conoco Phillips argues against the application of American law because the *Phillips New Jersey* and *Arctic Tokyo* were owned by its Liberian subsidiary. However, ConocoPhillips does not dispute that ConocoPhillips owned the stock of this company. (D.I. 149 at 2–3) On the other hand, Hess admits that this factor weighs in favor of applying American law because Hess is a

19

Delaware company and Hess's ship, the *Good Hope*, operated out of east coast ports.  (D.I. 124 at 7)  Plaintiffs contend that both Vessel Defendants were the actual employers of Salvemini and are Delaware companies so American law applies.  (*See* D.I. 124-1 at 20:6–17)

ConocoPhillips argues that acceptance of Plaintiffs' arguments would amount to piercing the corporate veil.  *Neely* discounted such an argument because the *Lauritzen* analysis focuses on the operational contacts with the United States and the reasonableness of applying American law under the circumstances, and not for the purpose of reaching assets of the shareholders.  *Neely*, 63 F.3d at 194.

The *Neely* court held as follows:

[t]his analysis does not amount to piercing the corporate veil as the defendants argue in an attempt to forestall our considering [shipowner's] contacts with the United States. We are not looking at [shipowner's] connections to the United States for the purpose of reaching the personal assets of its shareholders. Rather, we are examining the substance of the connections for the purpose of determining the reasonableness of applying American law under the circumstances.

*Id.* at 194.

Accordingly, the Vessel Defendants are Delaware companies, the vessels in question operated in American ports, the subsidiary companies were owned by the Vessel Defendants and Salvemini testified that the Vessel Defendants were his employers because they paid his wages, accordingly, this factor favors the application of American law.

### v.    The Place of Contract

Vessel Defendants argue that Salvemini's employment contract was formed through an Italian staffing agency.  In *Lauritzen,* the Supreme Court discounted the importance of the place of contract and reasoned that "[a] seaman takes his employment, like his fun, where he finds it; a ship takes on crew in any port where it needs them." *Neely*, 63 F.3d at 192 (quoting *Lauritzen*, 345 U.S. at 588).  Although Salvemini used an employment agency in Italy to find work on the

merchant vessels in issue, he states his wages were paid directly by the Vessel Defendants. (*See* D.I. 124-3 at 21:17–24) Although Salvemini contracted in Italy for employment with the Vessel Defendants, this factor carries no significant weight in the choice of law analysis.

### vi.    Inaccessibility of a Foreign Forum

Vessel Defendants argue that Italy could serve as an alternative forum for Plaintiffs' claims. (D.I. 122 at 8) In support, both Vessel Defendants rely upon the same declaration of Alessandro Spinella, an Italian attorney who attests that Plaintiffs' claims could be heard in Italian courts because their injuries from asbestos exposure manifested in Italy. (*See* D.I. 122-8) Plaintiffs argue that Vessel Defendants have not shown that they, or any other Defendant in this case, would be subject to personal jurisdiction in Italy. (D.I. 135 at 7–8, 16–18)

*Neely* considered the potential inaccessibility of a foreign forum as a relatively insignificant factor that does not favor the law of any jurisdiction. *Neely*, 63 F.3d at 190. As the Supreme Court explained in *Lauritzen*, inaccessibility of a foreign forum is more appropriate t to a forum non conveniens-type analysis than to the question of the extraterritorial reach of a statute.[8] *Neely*, 63 F.3d at 190 (citing *Laurizen*, 345 U.S. at 589–90). Thus, the court finds that this factor is neutral in the analysis. *Id.*

### vii.    The Law of the Forum

The Vessel Defendants do not address this factor. (*See* D.I. 122 at 7–8; D.I. 124 at 7) Pursuant to *Lauritzen* and *Rhoditis*, this factor supports application of American law although it is deemed a "weak consideration" in the analysis. *Neely*, 63 F.3d at 190.

---

[8] These arguments are more fully addressed in the parties' arguments regarding the doctrine of *forum non conveniens*, which is more fully discussed *infra*, § V.B.5.

### viii.    Shipowner's Base of Operations

The final factor for the court to consider is the shipowner's base of operations.  Hess admits that this factor weighs slightly in favor of the application of American law, but ConocoPhillips maintains that Philtankers Inc. (owner and/or operator of the *Phillips New Jersey*) and Arctic LNG Transportation Co. (owner and/or operator of the *Arctic Tokyo*) are the responsible entities.  ConocoPhillips argues that to hold it responsible for the acts of their subsidiaries would be the legal equivalent of piercing the corporate veil.  (D.I. 124 at 7)  This argument has been rejected by *Neely*, as discussed in section, V.B.1.iv, *supra*.

ConocoPhillips, and Hess, as well as their predecessors, maintain(ed) their domiciles and bases of operations in the United States and, because some of the alleged asbestos exposure that led to Salvemini's injuries arguably took place in American ports, this weighs in favor of the application of American law.  As the Supreme Court put forth in *Rhoditis*:

> The flag, the nationality of the seaman, the fact that his employment contract was Greek, and that he might be compensated there are in the totality of the circumstances of this case minor weights in the scales compared with the substantial and continuing contacts that this alien owner has with this country. If, as stated in *Bartholomew v. Universe Tankships Inc.*, 263 F.2d 437, the liberal purposes of the Jones Act are to be effectuated, the facade of the operation must be considered as minor, compared with the real nature of the operation and a cold objective look at the actual operational contacts that this ship and this owner have with the United States.

*See Rhoditis,* 398 U.S. at 310 (applying American law despite foreign employer, foreign-flagged ship, foreign plaintiff, and contract in foreign language specifying foreign law).

### c.  Summary and Conclusion

In sum, consideration of the *Lauritzen* factors amply shows that application of American law is reasonable.  Only factor three weights slightly against the application of American law.  Factors four, seven, and eight favor the application of American law.  The court, therefore,

recommends that the court apply American law to the Plaintiffs' claims under the Jones Act and general maritime law.

## 2. The Jones Act

The Jones Act states that "[a] seaman injured in the course of employment . . . may elect to bring a civil action at law . . . *against the employer*." 46 U.S.C. § 30104(a) (emphasis added). Though a plaintiff alleging claims under the Jones Act must prove the traditional elements of negligence (duty, breach, notice, causation, and damages), the standard of proof for causation under the Jones Acts is sometimes termed "featherweight." *Watson v. Oceaneering Int'l, Inc.*, 387 F. Supp. 2d 385, 90–91 (D. Del. 2005) (citing *Evans v. United Arab Shipping Co. S.A.G.*, 4 F.3d 207, 210 (3d Cir.1993).

### i. Salvemini's Claims Under the Jones Act

Salvemini's claims under the Jones Act involve his alleged direct exposure to asbestos resulting in his progressive lung disease. ConocoPhillips argues that Salvemini has failed to show that he was exposed to asbestos aboard the *Phillips New Jersey* or *Arctic Tokyo* because he was unsure where the ships were built, he had not reviewed the maintenance logbooks for the ships, and because Salvemini was unsure whether the dust he inhaled on the ships contained asbestos particles. (D.I. 122 at 11–13) Hess likewise argues that Salvemini cannot demonstrate whether he was exposed to asbestos onboard the *Good Hope*. (D.I. 124 at 10) Therefore, Vessel Defendants conclude that Salvemini's claims under the Jones Act must be dismissed because no reasonable jury could find that Plaintiffs have met their burden on causation. In response, Plaintiffs argue that the record shows that there is a genuine issue of material fact as to whether Salvemini was exposed to asbestos aboard the *Phillips New Jersey*, *Arctic Tokyo*, and *Good Hope*. (D.I. 135 at 10–13)

The court agrees with Plaintiffs that there are genuine issue of material fact regarding whether Salvemini was exposed to asbestos while he was an alleged employee of ConocoPhillips and Hess. Salvemini testified that he worked repairing gaskets and pumps while aboard Vessel Defendants' ships. (D.I. 124-3 at 72:11–14, 73:23–74:2) The gaskets and the insulation surrounding the pumps contained asbestos, and Salvemini knew this because the spare parts he replaced came in boxes with a label stating that they contained asbestos. (D.I. 124-1 at 31:6–16) Salvemini testified that he breathed in the dust produced from removing the gaskets and insulation throughout his time aboard these vessels. (D.I. 124-1 at 37:21–38:5) Salvemini testified this dust would cover his clothes, body, and hair. (D.I. 124-1 at 37:18–20) The court finds this evidence is sufficient to create a genuine issue of material fact regarding whether Salvemini was exposed to asbestos while working aboard the *Phillips New Jersey*, *Arctic Tokyo*, or *Good Hope*, pursuant to the "featherweight" standard of causation under the Jones Act.

Accordingly, I recommend that the court **DENY** the motions for summary judgment brought by ConocoPhillips and Hess concerning Salvemini's claims under the Jones Act, Count IV.

### ii.    Plaintiffs' Claims under the Jones Act for Decedent's Exposure

Because Decedent was not "engaged or employed in any capacity on board a vessel," the Jones Act does not apply to her alleged injuries and death from mesothelioma. 46 U.S.C. § 10101(3). Plaintiffs state that they "do not dispute that Ms. Dell'Accio had no Jones Act claim, because she was not a seaman." (D.I. 138 at 14) Accordingly, I recommend that summary judgment in favor of ConocoPhillips and Hess be **GRANTED** on all claims on behalf of Decedent under the Jones Act, Count IV.

### 3. General Maritime Law

"[A] party seeking to invoke federal admiralty jurisdiction pursuant to 28 U.S.C. § 1333(1) over a tort claim must satisfy conditions both of location and of connection with maritime activity." *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 533 (1995). For tort claims, the locality test requires that "the tort occurred on navigable water or ... injury suffered on land was caused by a vessel on navigable water." *Id.* The connection test requires that the incident could have a "potentially disruptive impact on maritime commerce" and that the general character of the "activity giving rise to the incident" shows a "substantial relationship to traditional maritime activity." *Id.* at 534.

Under general maritime jurisdiction, Plaintiffs allege that the vessels were unseaworthy due to the asbestos that was onboard. (D.I. 1 at ¶¶ 56–61) Under maritime law, the owner of a ship has a "non-delegable duty to provide seamen a vessel that is reasonably fit for its purpose." *Calhoun v. Yamaha Motor Corp., U.S.A.*, 40 F.3d 622, 631 (3d Cir.1994); *see also Earles v. Union Barge Line Corp.*, 486 F.2d 1097, 1102 (3d Cir.1973). "Maritime law has incorporated the doctrines of strict liability and negligence, and, more specifically, products liability." *Alaska Bulk Carriers, Inc. v. Goodall Rubber Co.*, 1990 WL 82361, at *3 (D. Del. June 14, 1990) (citation omitted).

### i. Salvemini's Claims under General Maritime Law

It is undisputed that Salvemini's claims meet the locality test because he was aboard the vessels in issue on navigable waters during his alleged asbestos exposure. *Grubart*, 513 U.S. at 533–34. When a worker whose claims meet the locality test was primarily sea-based (or in the shipyard) when exposed to asbestos, those claims will almost always satisfy the connection test

under general maritime law. *See id.* at 534; *see also Air & Liquid Systems Corp. v. DeVries*, 586 U.S. 446 (2019); *see also Conner v. Alfa Laval, Inc.*, 799 F. Supp. 2d 455, 463–69 (E.D. Pa. 2011) (finding that asbestos exposure aboard a Navy vessel satisfied the locality and connection tests that trigger federal maritime jurisdiction).

Vessel Defendants argue that Salvemini's exposure upon their vessels was not sufficient to establish a high enough level of exposure such that an inference that the asbestos was a substantial factor in causing his injuries is anything more than conjectural. (D.I. 124 at 8) Specifically, Vessel Defendants argue that Salvemini's testimony shows he does not know whether he was exposed to asbestos. But viewing the context of Salvemini's testimony favorably to the Plaintiffs, the court is persuaded that a reasonable juror could find that Salvemini was exposed to asbestos because he read on the boxes and on the products themselves that they contained asbestos. (D.I. 124-1 at 55:2–20) Salvemini was just not aware of what asbestos was at that time.

Salvemini testified that while aboard all three merchant vessels, he inhaled dust produced from removing flange gaskets and insulation on the pumps. (D.I. 124-1 at 37:21–38:5) The dust covered his clothes, body, and hair. (D.I. 124-1 at 37:18–20) The court finds the evidence in the record is sufficient to create a genuine issue of material fact regarding whether Salvemini was exposed to asbestos that caused his alleged injuries while working aboard the *Phillips New Jersey*, *Arctic Tokyo*, or *Good Hope*.

Accordingly, I recommend that summary judgment for ConocoPhillips and Hess be **DENIED** for Salvemini's claims under general maritime law, Count V.

ii.     **Survival, Wrongful Death, and Loss of Consortium claims under General Maritime Law**

The Vessel Defendants argue that no federal court recognize a cause of action for "take-home" asbestos exposure under the Jones Act or maritime law.  (*Id.*)  Plaintiffs argue that maritime law extends to Plaintiffs' claims arising from Decedent's alleged exposure through the Extension of Admiralty Jurisdiction Act ("EAJA"), 46 U.S.C. § 30101(a).[9]  (D.I. 135 at 13–14).

The traditional test for admiralty tort jurisdiction asked only whether the tort occurred on navigable waters if so, admiralty jurisdiction followed; if it did not, admiralty jurisdiction did not exist.  *Grubart*, 513 U.S. at 532.  This general presumption changed in 1948, however, when Congress enacted the Extension of Admiralty Jurisdiction Act.  The EAJA states:

> [t]he admiralty and maritime jurisdiction of the United States shall extend to and include all cases of damage or injury, to person or property, caused by a vessel on navigable water, notwithstanding that such damage or injury be done or consummated on land.

46 U.S.C. § 30101(a).

To support their argument that the locality test is satisfied for Decedent's alleged exposure, Plaintiffs rely upon *Grubart*, which involved pile-driving near piers of a bridge that were damaged by the activity causing extensive flooding in downtown Chicago a month later.  *See Grubart*, 513 U.S. at 527.  The Supreme Court found the location of the activity had a sufficient connection to navigable waters because the barge from which the pile driving took place was on navigable waters.  *Id.*  The court rejected the argument that the remoteness in time between the pile driving and flooding was sufficient to defeat the locality test.  *Id.*  In *Grubart*, the damage from the flooding had a direct connection to the pile driving activity on navigable

---

[9] The AJEA was previously cited as 46 App. U.S.C.A. § 740.  Plaintiffs' briefing refers to this statute as the Admiralty Extension Act ("AEA").  (D.I. 135 at 13–15)

water, unlike the instant case, in which the alleged exposure to the Decedent was indirect, secondary, and solely land based.

Plaintiffs' broadening of a duty of care extending from Vessel Defendants to Decedent based on *Kermarec* is misplaced. In *Kermarec*, a visitor aboard a ship suffered injury as a result of the ship owner's negligence. *Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 632 (1959) (emphasis added) *Kermarec* held that: "the owner of a ship in navigable waters *owes to all who are on board for purposes not inimical to his legitimate interests* the duty of exercising reasonable care under the circumstances of each case." *Id.* at 632. Vessel Defendants argue in response that where the duty of care was expanded is limited to situations where the injuries occurred adjacent to the vessels.

Plaintiffs out-of-circuit case authorities relying on *Kermarec* concern factual scenarios distinguishable from the instant matter. *Bubla v. Bradshaw*, 795 F.2d 349, 352 (4th Cir. 1986) (finding that maritime law applied to the wrongful death of a marine surveyor who was electrocuted while aboard the ship docked at port); *Nissan Motor Corp. in U.S.A. v. Maryland Shipbuilding & Drydock Co.*, 544 F. Supp. 1104, 1110 (D. Md. 1982), *aff'd sub nom.*, 742 F.2d 1449 (4th Cir. 1984) (finding that common law concepts of trespass and nuisance applied in the absence of clearly defined maritime law for damage to vehicles next to shipyard).

However, it is undisputed that Decedent never stepped foot on or near the Vessel Defendants' ships. Decedent's claims arise solely from laundering Salvemini's clothing in their home in Italy. (D.I. 124-1 at 34:16–19)

Vessel Defendants note that the federal courts that have addressed this issue have found that maritime law does not extend to "take-home" asbestos exposure. (D.I. 122 at 14–15) In *Coach v. Armstrong International Inc.*, which is analogous to this case, the court found that the

28

plaintiff's claims regarding asbestos-exposure resulting from laundering her husband's clothes took place "during land-based work" in her home in New York and thus, were governed by New York law. 2014 WL 6746785, at *1 (E.D. Pa. Sept. 25, 2014). Plaintiffs' attempt to distinguish *Coach* is unavailing because the court did, in fact, analyze whether maritime law applied to the plaintiff's claims and found that the plaintiff's exposure was land based and applied the law of the place of exposure. (D.I. 135 at 14); *see Coach*, 2014 WL 6746785, at *1 n.1.

Furthermore, Plaintiffs focus exclusively on the location test without providing any argument on the connection test. The record before the court contains no argument in support of the connection between Decedent's land-based exposure to asbestos and how it has a potentially disruptive effect on maritime commerce, nor have Plaintiffs argued that "the general character" of the "activity giving rise to the incident" shows a "substantial relationship to traditional maritime activity." *Grubart*, 513 U.S. at 534; (*see* D.I. 135 at 13–14; D.I. 138 at 14–15)

Plaintiffs have not shown that general maritime law applies to any of the claims, i.e., survival claims, wrongful death claims, and loss of consortium claim, arising from Decedent's alleged land based asbestos exposure which took place in Italy. As the laws of the United States are not applicable to the claims arising from Decedent's exposure and Plaintiffs have failed to argue the applicability of any other law, the court recommends that such claims fail on their merits. *Neely*, 63 F.3d at 181.

Accordingly, I recommend that summary judgment in favor of ConocoPhillips and Hess be **GRANTED** for all of Plaintiffs' claims related to the Decedent's alleged take-home exposure under general maritime law, Count V.

### 4. Punitive Damages

Without addressing the factual basis alleged in support of Plaintiffs' claims for punitive damages, ConocoPhillips asserts that such claims are foreclosed as a matter of law based on *Dutra Group v. Batterton*, 588 U.S. 358 (2019).  (D.I. 122 at 16)  Plaintiffs argue that *Batterton* applies solely to unseaworthiness claims and that punitive damages arising from their negligence and strict liability claims are recoverable.  (D.I. 135 at 15)

In  *Morgan* v. *Almars Outboards, Inc.*, this court ruled that claims for punitive damages have been historically available under general maritime law.  316 F. Supp. 3d 828, 840–42 (D. Del. 2018).  Thus, the court recommends that Vessel Defendants' motion for summary judgment on punitive damages be **DENIED**.

### 5. *Forum Non Conveniens*

In the alternative, both Vessel Defendants argue that this case should be dismissed without prejudice and transferred to Italy under theory of *forum non conveniens*.  (D.I. 122 at 18–22; D.I. 124 at 11–14)  "The forum non conveniens determination is committed to the sound discretion of the trial court."  *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 257 (1981).  It is the movant's burden to demonstrate that a dismissal for *forum non conveniens* is warranted.  *Bhatnagar v. Surrendra Overseas Ltd.*, 52 F.3d 1220, 1226 (3d Cir. 1995).

Pursuant to the doctrine of *forum non conveniens*, "[w]hen an alternative forum has jurisdiction to hear the case, and when trial in the plaintiff's chosen forum would 'establish . . . oppressiveness and vexation to a defendant . . . out of all proportion to plaintiff's convenience,' or when the 'chosen forum [is] inappropriate because of considerations affecting the court's own administrative and legal problems,' the court may, in the exercise of its sound

discretion, dismiss the case." *Windt v. Qwest Commc'ns Int'l, Inc.*, 529 F.3d 183, 189 (3d Cir. 2008) (quoting *Koster v. (Am.) Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 524 (1947)).

In the context of a *forum non conveniens* analysis, an adequate alternative forum exists when "the defendant is amenable to process in the other jurisdiction." *Piper*, 454 U.S. at 254 n.22. "A forum in which [p]laintiff's claims are cognizable and [d]efendant is amenable to service should be declared unsuitable only in the 'rare circumstances' where the remedy provided is 'so clearly inadequate or unsatisfactory as to provide no remedy at all.'" *Jane Doe L.C. v. Aimbridge Hosp., LLC*, 2020 WL 5633363, at *3 (D. Del. Sept. 21, 2020) (quoting *Wilmot v. Marriott Hurghada Mgmt., Inc.*, 712 F. App'x 200, 203–04 (3d Cir. 2017)).

In *Wilmot*, the moving Defendants had conceded to jurisdiction in the proposed forum, Egypt and waived any future arguments. Here, Defendants have provided a declaration of Alessandro Spinella, an Italian attorney who certifies that Italian courts could exercise jurisdiction over Plaintiffs' claims and Vessel Defendants. (D.I. 122-8; D.I. 125) However, neither Vessel Defendant waives future arguments in Italy and instead they encourage the court to dismiss on these grounds without making any concessions to subject matter or personal jurisdiction in Italy.

### a.     Deference to Plaintiffs' Choice of Forum

Moving to the other factors in the analysis, the court must next determine "the appropriate amount of deference to be given the plaintiff's choice of forum." *Eurofins Pharma US Holdings v. BioAlliance Pharma SA*, 623 F.3d 147, 160 (3d Cir. 2010). A plaintiff's choice of forum is normally due considerable deference, although in the case of a foreign plaintiff, such as the Plaintiffs here, the choice may deserve less deference because it may be less reasonable to assume that a venue which is not the plaintiff's home forum is convenient. *Piper,* 454 U.S. at

255–56. Still, that reduced deference "is not an invitation to accord a foreign plaintiff's selection of an American forum *no* deference since dismissal for forum non conveniens is the exception rather than the rule." *Lacey v. Cessna Aircraft Co.*, 862 F.2d 38, 45–46 (3d Cir. 1988) (internal quotation marks omitted).

Even when plaintiffs' choice of forum may have considerably less deference than a domestic plaintiff filing suit, the court is still obliged to give plaintiff's choice some weight. *Lony v. E.I. Du Pont de Nemours & Co.*, 935 F.2d 604, 609 (3d Cir. 1991) ("*Lony* II"). In light of the deference owing to the plaintiff's choice, "[t]he moving defendant must show that ... the private and public interest factors weigh heavily on the side of dismissal." *Id.* at 44.

**b.    Private & Public Interest Factors**

The relevant private interest factors include access to sources of proof; the availability of compulsory process for the attendance of unwilling witnesses; the cost of obtaining attendance of unwilling witnesses; and "all other practical problems that make trial of a case easy, expeditious, and inexpensive." *Trotter v. 7R Holdings LLC*, 873 F.3d 435, 442 (3d Cir. 2017). The public interest factors include court congestion; the likelihood that the case will burden a jury composed of people with no relation to the litigation; the probability that the case will "touch the affairs of many persons" in the community; and the chances that the court will be "at home" with the governing law. *Id.*

As to the private interest factors, there has been no showing that there will be any sources of proof that would not be available in the United States. Moreover, Vessel Defendants have not specifically identified any witnesses who could not travel from Italy or provide remote testimony, as did Salvemini.

The public interest factors, likewise, do not weigh in favor of dismissal as this case has already been pending here for three years and is at the summary judgment stage. Moreover, Vessel Defendants have not specifically identified any statistics regarding court congestion. Lastly, this court recommended that American law is applicable to the pending claims.

### c.    Extent of Discovery on the Merits

Moreover, the Third Circuit in *Lony* added a fourth factor to their *forum non conveniens* analysis, which states that once the litigation has progressed significantly in the federal court, considerations of judicial efficiency and expediency must be weighed in favor of retention of jurisdiction in the forum. *Lony II*, 935 F.2d 604, 615 (3d Cir. 1991). As extensive litigation already occurred without the issue of alternative forum having been raised until now, this factor weighs against dismissal. (D.I. 50)

As the court stated in *Lony*: ". . . the Supreme Court expressly eschewed the need for extensive fact investigation in connection with a *forum non conveniens* motion. Its decision contemplated merely limited discovery before the disposition of a *forum non conveniens* motion, reflecting both the preliminary nature of the question and counterproductivity of substantial discovery before dismissing an action so that it can be reinstituted elsewhere." *Lony II*, 935 F.2d at 614. The *Lony II* court ultimately stated: "[t]herefore, we hold today that whenever discovery in a case has proceeded substantially so that the parties already have invested much of the time and resources they will expend before trial, the presumption against dismissal on the grounds of *forum non conveniens* greatly increases." *Id.*

Accordingly, the court recommends that Vessel Defendants' alternative *forum non conveniens* motion be **DENIED**.

VI.    **CONCLUSION**

For the foregoing reasons, I recommend that Buffalo's motion be **GRANTED**, I further recommend that ConocoPhillips's and Hess's motion be **GRANTED-IN-PART and DENIED-IN-PART** as follows:

- Vessel Defendants' motion for summary judgment on all Plaintiffs claims arising from Decedent's alleged take home asbestos exposure should be **GRANTED**;

- Vessel Defendants' motion for summary judgment on Count VII, loss of consortium and Count VIII, wrongful death should be **GRANTED**;

- Defendant Hess's motion for summary judgment, Count III, false representation should be **GRANTED**;

- Vessel Defendants' motion for summary judgment as to Salvemini's claims under general maritime law, Count V and the Jones Act Count IV, should be **DENIED**;

- Vessel Defendants' motion to exclude punitive damages should be **DENIED**; and

- Vessel Defendants' alternative *forum non conveniens* motion should be **DENIED**.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1. The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b)(2). The objections and responses to the objections are limited to ten (10) pages each. The failure of a party to object to legal conclusions may result in the loss of the right to de novo review in the District Court. *See Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006); *Henderson v. Carlson*, 812 F.2d 874, 878–79 (3d Cir. 1987).

The parties are directed to the court's Standing Order For Objections Filed Under Fed. R. Civ. P. 72, dated March 7, 2022, a copy of which is available on the court's website, http://www.ded.uscourts.gov.

Dated:  February 7, 2025

Sherry R. Fallon
United States Magistrate Judge